UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAUL MURRAY

      Plaintiff,

v.                                     CASE NO.: 8:20-cv-00824-T-SCB-AEP

PRONTO INSTALLATIONS, INC.,
A Florida Profit Corporation, and
CHRISTOPHER IRVIN, individually

      Defendants
_____/

## ANSWER AND AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendants Pronto Installations, Inc., and Christopher Irvin (collectively referred to as "Defendants"), by and through undersigned counsel hereby filed their Answer and Affirmative Defenses to Plaintiff Paul Murray's Complaint and Demand for Jury Trial, and say in response to the specific numbered paragraphs as follows;

1.      Paragraph 1 of the Complaint does not contain an allegation of fact for which either an

admission or denial is required.

2.      Defendants admit the allegations contained in paragraph 2 of the Complaint.

3.      Defendants deny the allegations contained in paragraph 3 of the Complaint

4.      Defendants admit the allegations contained in paragraph 4 of the Complaint

5.      Defendants admit the allegations contained in paragraph 5 of the Complaint

6. As written in the Complaint, "West Florida" is not defined. Defendants are not able to respond. To the extent West Florida is limited to certain counties, Defendants admit to providing installation services to a limited number of counties in Florida.

7. Defendants denies the allegations contained in paragraph 7 of the Complaint

8. Paragraph 8 of the Complaint does not contain an allegation of fact for which either an admission or denial is required.

9. Paragraph 9 of the Complaint does not contain an allegation of fact, instead it makes a legal conclusion. As written the paragraph is denied.

10. Defendants denies the allegations contained in paragraph 10 of the Complaint.

11. Defendants denies the allegations contained in paragraph 11 of the Complaint

12. Defendants denies the allegations contained in paragraph 12 of the Complaint.

13. Defendants denies the allegations contained in paragraph 13 of the Complaint.

14. Paragraph 14 of the Complaint does not contain an allegation of fact, instead it makes a legal conclusion. As written the paragraph is denied.

15. This is a compound paragraph alleging multiple facts. Admitted as to dates worked. Denied as to remainder.

16. Defendants denies the allegations contained in paragraph 16 of the Complaint.

17. Defendants denies the allegations contained in paragraph 17 of the Complaint.

18. Defendants denies the allegations contained in paragraph 18 of the Complaint.

19. Defendants have no knowledge of Plaintiff's need for an attorney and have no knowledge of any payment agreement between Plaintiff and his counsel.

## Count I. Overtime- FLSA Both Defendants

20. Paragraph 20 of the Complaint does not contain an allegation of fact for which either an admission or denial is required.

21. Defendants denies the allegations contained in paragraph 21 of the Complaint. Plaintiff is not entitled to Overtime.

22. Defendants denies the allegations contained in paragraph 22 of the Complaint.

23. Defendants denies the allegations contained in paragraph 23 of the Complaint.

## Count II. Retaliation- FLSA Both Defendants

24. Paragraph 24 of the Complaint does not contain an allegation of fact for which either an admission or denial is required.

25. Paragraph 25 of the Complaint does not contain an allegation of fact for which either an admission or denial is required.

26. Defendants denies the allegations contained in paragraph 26 of the Complaint.

27. Defendants denies the allegations contained in paragraph 27 of the Complaint.

28. Paragraph 28 of the Complaint does not contain an allegation of fact for which either an admission or denial is required.

29. Defendants denies the allegations contained in paragraph 29 of the Complaint as written.

30. Defendants denies the allegations contained in paragraph 30 of the Complaint.

31. Defendants denies the allegations contained in paragraph 31 of the Complaint.

32. Defendants denies the allegations contained in paragraph 32 of the Complaint.

33. Defendants denies the allegations contained in paragraph 33 of the Complaint.

## Affirmative Defenses

### First Affirmative Defense

Plaintiff's claims are barred by the doctrine of after-acquired evidence.

### Second Affirmative Defense

Due to Plaintiff's job duties, and responsibilities, Plaintiff was exempt from the overtime provisions under 29 CFR Section 541, subpart F as a service employee who conducted outside service calls for customers.

### Third Affirmative Defense

Due to Plaintiff's job duties, and responsibilities, the manner in which he was paid, and the nature of Defendants business as a retail service provider, Plaintiff was exempt from the overtime provisions of the Fair Labor Standards Act pursuant to the Retail Service Establishment or Commissioned Sales exemption under 29 U.S.C. § 207(i), as Plaintiff was employed in a service establishment, Plaintiff's compensation was from commissions; and Plaintiffs' regular rate of pay is at least one and one-half times the minimum wage. See 29 U.S.C. § 207(i).

### Fourth Affirmative Defense

At all material times, Plaintiff was paid for all hours worked for Defendant. Accordingly, to the extent Plaintiff was not exempt from the FLSA's overtime pay requirements, Plaintiff is only entitled to overtime pay for any hours worked over forty (40) hours per week. Defendants are therefore entitled to a set-off from any damages awarded to Plaintiff for any wages paid to Plaintiff for non-compensable time.

**Fifth Affirmative Defense**

To the extent Plaintiff is not exempt from the FLSA's overtime pay requirements, Plaintiff is not entitled to any compensation for time spent preliminary or postliminary to his principal work activities.

**Sixth Affirmative Defense**

Without admitting liability for any acts or omissions alleged, any acts or omissions complained of were undertaken in good faith, and/or in conformity with, and in reliance on, administrative regulations, orders, rulings, or applicable interpretations specifically related to Retail or Service Establishment and Commissioned Sales exemptions.

**Seventh Affirmative Defense**

Plaintiff is not entitled to liquidate damages, even if he can prove a violation of the law, because any acts or omissions giving rise to Plaintiff's claims were undertaken or made in good faith, and Defendants had reasonable grounds for believing that its actions or omissions did not violate the law.

**Eighth Affirmative Defense**

To the extent Plaintiff is not exempt from the FLSA's overtime pay requirements, Plaintiff's action is barred because he seeks to recover for time that is de minimus work time and thus not compensable under the FLSA.

**Ninth Affirmative Defense**

Plaintiff was terminated for legitimate non-retaliatory reasons including poor work performance, illegal and/or illicit activity, exposing Defendants to liability, client complaints, failure to complete assignments, tasks, or otherwise properly conduct his duties, problems communicating with clients, customers, employers, co-workers, staff, failing to report assignments, tasks, and/or properly report to work.

**Tenth Affirmative Defense**

Plaintiff acknowledged, accepted, requested, and participated in commissions-based compensation based on his own self-interest and desired work and pay arrangement.

**Eleventh Affirmative Defense**

Plaintiff is not entitled to any pre-shift time.

**Twelfth Affirmative Defense**

Plaintiff is not entitled to any post-shift time.

**Thirteenth Affirmative Defense**

Plaintiff is not entitled to compensation for commuting time to the job site.

**Fourteenth Affirmative Defense**

Defendants reserve the right to amend this Answer and assert additional Affirmative Defenses as Plaintiff's claims are more fully disclosed in the course of Discovery in this litigation.

WHEREFORE, Defendants pray this Honorable Court, upon hearing thereof, enter a Judgment as follows;

1. Order that Plaintiff take nothing in this action.

2. Dismiss Plaintiff's Complaint and any claim therein in its entirety with prejudice.

3. Order that Judgment be entered in the Defendants' favor.

4. Award Defendants their attorney's fees against Plaintiff.

5. Award costs to Defendants.

6. Award Defendants such other relief both in law and in equity, to which it may show itself to be justly entitled.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAUL MURRAY

    Plaintiff,

v.                                       CASE NO.: 8:20-cv-00824-T-SCB-AEP

PRONTO INSTALLATIONS, INC.,
A Florida Profit Corporation, and
CHRISTOPHER IRVIN, individually

    Defendants

    And

PRONTO INSTALLATIONS, INC.,
A Florida Profit Corporation, and
CHRISTOPHER IRVIN, individually

    Counter-Claimants

v.

PAUL MURRAY

    Counter-Claim Defendant

_____/

## **COUNTER CLAIM FOR DEFAMATION**

Counter Claimants Pronto Installations, Inc., and Christopher Irvin, individually, and through undersigned counsel pursuant to Federal Rules of Civil Procedure Rule 13(a) files this Counter-claim against Mr. Paul Murray and allege as follows;

### **Parties and Jurisdiction**

1. Jurisdiction rests in this Court pursuant to the doctrine of supplementary jurisdiction pursuant to 28 U.S.C. § 1367.

2. Venue is proper as alleged in the Original Complaint.

3. Jurisdiction over this counter claim does not require the addition of any additional parties.

4. The facts giving rise to this counter claim arose from the facts set forth in the Original Complaint.

5. There is a logical relationship between the Original Complaint and this Counter claim.

6. Substantially the same evidence will support or refute the Original Complaint as well as Defendant's counter claim.

7. Counter Claimant, Pronto Installations, Inc., is a Florida Profit Corporation authorized to conduct business in the State of Florida with its principal place of business as 12308 Drake Lane, Spring Hill, FL 34609.

8. Counter Claimant, Christopher Irvin is a resident of Hernando County Florida.

9. Counter-Claim Defendant, Paul Murray is/was a resident of Pasco County, Florida.

## **Factual Background**

10. In his Original Complaint, Paul Murray claims that, on or about February 18, 2020, Counter Claim Defendant, complained to Counter Claimants, Pronto Installations, and Christopher Irvin about his long working hours and the failure to pay him overtime.

11. Murray also alleges that same day that Counter Claimants retaliated against him by immediately terminating his employment.

12. On that same day, Mr. Paul Murray published on his Facebook page defamatory, false statements specifically identifying Mr. Chris Irvin, by name, and "tagging" Mr. Irvin's Facebook page in the defamatory posts.

13. Mr. Murray published these statements highlighting Mr. Chris Irvin by name.

14. Murray was able to "tag" Mr. Irvin in his Facebook post which allowed the reader of the published statement to click on Mr. Irvin's name and go directly to his Facebook page.

15. Mr. Murray published on Facebook that Mr. Irvin committed dishonest, illegal, and fraudulent acts imputing injury on his business practices and profession.

16. Specifically, Mr. Murray stated that Mr. Irvin lied to Murray.

17. Specifically, Mr. Murray stated that Mr. Irvin stole from Mr. Murray.

18. Specifically, Mr. Murray stated that Mr. Murray was dishonest, and committed fraud by hiding a worker's compensation claim from Murray.

19. In retaliation for terminating Mr. Murray, Mr. Murray sought to damage Mr. Irvin's business and professional reputation by accusing him of illicit, and dishonest acts.

20. Mr. Murray alleged that Mr. Irvin deceived Mr. Murray by "hiding" a worker's compensation claim by telling Mr. Murray he was not entitled to workers compensation even though Murray states it was a work-related injury.

21. Mr. Murray also stated that Mr. Irvin caused his work-related injury, while "on the job" and then denied him worker's compensation by lying to him about coverage.

22. Mr. Murray accused Mr. Irvin of insurance fraud.

23. Mr. Murray identified Mr. Irvin as Murray's employer by stating that Irvin caused his work related injury and hid workers compensation from Murray.

24. Mr. Murray then states he will inform Lowe's of Mr. Irvin's actions: "I wonder what Lowe's is gonna think when they find out what I have to say."

25. Pronto Installations and Christopher Irvin have a long-standing contract wherein Pronto Installations and Christopher Irvin will install and service Lowe's customers who purchase an appliance from Lowe's.

26. Employees and staff of Pronto Installations and Christopher Irvin saw and read Mr. Murray's false statements published on Facebook.

27. After reading the false statements published by Mr. Murray, employees and staff of Pronto Installations notified Mr. Irvin of the content of Mr. Murray's statements on Facebook.

28. After reading the false and defamatory statements published by Mr. Murray, employees and staff of Pronto Installations raised questions, comments, and concerns about the negative impact on the business, the effect on Mr. Irvin professionally for being accused of committing insurance fraud, or worker's compensation fraud, dishonest acts, and theft by a former employee. Or, how customers, particularly Lowe's, with whom Pronto Installations and Mr. Irvin have a long-standing contract for services would react to these false claims.

29. The false statements were also published on a public Facebook feed wherein postings that included Mr. Irvin's name were visible to anyone who was "Facebook friends" with Mr. Irvin.

30. Additionally, the statements were all published to all of Mr. Murray's Facebook friends.

31. There were multiple individuals who commented, and reacted to the postings. These were all third parties not including Mr. Irvin.

32. Mr. Irvin's wife, Blanca Irvin, also viewed Mr. Murray's posts and publications. She raised concerns for her husband's professional reputation in the community, the damage caused to the business, business relationships, and employee relationships.

33. Employees were concerned that as a consequence of the defamatory statements published about Mr. Irvin's role as an employer, clients, customers, and members of the community would not want to do business with Mr. Irvin or by extension, Pronto Installations.

## Count 1

### Defamation as to False Statements Published to a Third Party

34. Counter-Claimant's Pronto Installations and Christopher Irvin reaffirm the allegations contained in paragraphs 1-33 as if fully set forth herein and further allege as follows:

35. In his publicly posted statements, Mr. Murray stated that Mr. Christopher Irvin mentally and physically abused him. "It's funny to me how c***suckers like Chris Irvin think he can mentally and physically abuse people and get away with it."

36. Mr. Murray stated that Mr. Irvin lied to him.

37. Mr. Murray stated that Mr. Irvin stole from him.

38. Mr. Murry stated that Mr. Irvin is responsible for a heart attack that Mr. Murray alleges occurred while working for Mr. Irvin. "Oh btw this c**ksucker is the reason for my heart attack."

39. Mr. Murray stated Mr. Irvin "hid" a worker's compensation claim from him. "He then hid the worker's compensation from me claiming workers compensation doesn't pay for heart attacks meanwhile I got hurt on the job and it was caused by his actions..." Mr. Murray stated that Mr. Irvin "hid" worker's compensation benefits because Mr. Murray states that Mr. Irvin told him worker's compensation does not pay for heart attacks.

40. Mr. Murray states that he was hurt on the job. Mr. Murray states that his on the job injury was Mr. Irvin's fault: "Meanwhile I got hurt on the job and it was caused by his (Mr. Irvin's) actions."

41. Mr. Murray then posts: "I wonder what Lowe's is gonna think when they find out what I have to say."

42. Mr. Murray expressly identified Lowe's in his public postings.

43. Mr. Irvin is contracted with Lowe's to install appliances that are purchased by Lowe's customers.

44. Mr. Paul Murray was an employee of Mr. Irvin from January 2017 through February 18, 2020.

45. On February 18, 2020, Mr. Murray was terminated from his employment.

46. On February 18, 2020, Mr. Murray published to third parties statements of fact that are false and injurious to and about Mr. Irvin, particularly false statements concerning how he conducts his business, and his profession.

47. Mr. Irvin did not steal from Mr. Murray as Mr. Murray falsely alleges in his public posting.

48. Mr. Irvin did not lie to Mr. Murray as Mr. Murray falsely alleges in his public posting.

49. Mr. Irvin did not hide worker's compensation from Mr. Murray as Mr. Murray falsely alleges in his public positing.

50. Mr. Irvin did not cause Mr. Murray's heart attack which Mr. Murray falsely alleges was work related.

51. Mr. Irvin did not physically abuse or mentally abuse Mr. Murray as Mr. Murray falsely alleged.

52. Mr. Irvin did not claim worker's compensation did not cover Mr. Murray as a way to hide a worker's compensation claim as Mr. Murray falsely alleged

53. Mr. Murray unequivocally identified Mr. Irvin by name.

54. Mr. Murry unequivocally linked Mr. Irvin to Lowe's threatening to repeat these false statements to Lowe's knowing that Lowe's is Mr. Irvin's contractor.

55. Mr. Murray's statements concern Mr. Irvin's business, profession, occupation, and role as an employer.

56. Mr. Murray's statements that Mr. Irvin caused Mr. Murray's on the job injury and hid worker's compensation coverage or benefits is false.

57. Mr. Murray's published statements that Mr. Irvin caused Mr. Murray's on the job injury and hid worker's compensation coverage or benefits is a publication that imputes to Mr. Irvin conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, or profession.

58. Mr. Murray's published false statements that Mr. Irvin lied to him and stole from him is a publication that tends to injure Mr. Irvin's business or profession.

59. Mr. Murray's published false statements that Mr. Irvin lied to him and stole from him is a publication that did cause injury Mr. Irvin's business or profession.

60. Mr. Irvin is a private individual.

61. Mr. Murray is a non-media Defendant.

62. Mr. Murray's publications were false.

63. Mr. Murray's publications were not privileged.

64. Mr. Murray has not restricted access to his public Facebook page for which the posts remain visible to anyone who has access to the internet.

65. Mr. Murray's published statements concerning deceit, by his employer, that Mr. Irvin lied to him have the natural and proximate consequence of causing injury to Mr. Irvin in his

personal, social, official, or business relations of life, wrong and injury are presumed or implied, and such publication is actionable per se.

66. Mr. Murray's published statements that his employer Mr. Irvin stole from him have the natural and proximate consequence of causing injury to Mr. Irvin his personal, social, official, and business relations of life for which wrong and injury are presumed or implied and such publication is actionable per se.

67. Mr. Murray's published statements that his employer, Mr. Irvin, committed fraud by "hiding" a worker's compensation claim him have had the natural and proximate consequence of causing injury to Mr. Irvin his personal, social, official, and business relations of life for which wrong and injury are presumed or implied and such publication is actionable per se.

68. Since Mr. Murray's published his false statements about Mr. Irvin, Mr. Irvin and Pronto Installations have suffered monetary damages.

69. Pronto Installations and Mr. Irvin have suffered damages as a consequence of Mr. Murray's published defamatory statements.

70. Counter Claim Defendant Paul Murray intentionally published false information with knowledge of its falsity to retaliate against Counter Claimant's Pronto Installations and Christopher Irvin for terminating his employment.

49. Counter Claim Defendant Paul Murray published the knowing false statements with malice and reckless disregard for the truth of the statements.

50. Counter Claim Defendant Paul Murray published the knowingly false statements in a deliberate attempt to jeopardize Counter Claimants Pronto Installations and Christopher Irvin professional reputations and cause injury to Mr. Irvin personally, and professionally.

51. Pronto Installations and Mr. Christopher Irvin suffered harm and incurred damages that were a direct result of Murray's publication of these false statements.

## PRAYER FOR RELIEF

WHEREFORE, Counter Claimants PRONTO INSTALLATIONS and CHRISTOPHER IRVIN respectfully request that this Court enter Judgment against PAUL MURRAY, and award damages, including punitive damages and costs, including attorney's fees for this action and such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Counter Claimants Pronto Installations, Inc., and Christopher Irvin demand a trial by jury on any issues so triable.

Dated June 22, 2020.

                                                                              Respectfully submitted,

**WHITTEL & MELTON, LLC**
*/s/ William Sheslow*
William J. Sheslow, Esq.
Florida Bar No.: 92042
Thomas J. Jerla, Esq.
Florida Bar No.: 570958
11020 Northcliffe Boulevard
Spring Hill, Florida 34608
Telephone: (352)683-2016
Facsimile: (352) 556-4839
Will@theFLlawfirm.com
Tjerla@theFLlawfirm.com
Pleadings@theFLlawfirm.com
Jwalsh@theFLlawfirm.com
Pls@theFLlawfirm.com
*Attorneys for Counter Claimants*

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on June 22, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

            */s/ William J. Sheslow*
            William J. Sheslow, Esq.