## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PAUL MURRAY,

       Plaintiff,

v.                                  CASE NO.: 8:20-cv-00824-SCB-AEP

PRONTO INSTALLATIONS, INC.,
a Florida Profit Corporation, and
CHRISTOPHER IRVIN, individually,

       Defendants.

_____/

### PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIM

COMES NOW the Plaintiff, PAUL MURRAY ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6) and Local Rule 3.01(a), and hereby files this Dispositive Motion to Dismiss the Amended Counterclaim filed by Defendant Christopher Irvin (Doc. 25) ("Counter-Claimant") for failure to state a claim upon which relief can be granted.

### I.      STANDARD OF REVIEW

In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*,

550 U.S. at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), courts limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *LaGrasta v. First Union Sec., Inc*., 358 F.3d 840, 845 (11th Cir. 2004). Dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

The rule of decision in a diversity action is provided by state law. *Erie Railroad v. Tompkins*, 304 U.S. 64, 78 (1938). To state a claim for defamation under Florida law, Plaintiff must show: (1) publication; (2) false statement of fact; (3) the publisher's negligent disregard as to the falsity of the statement; (4) actual damages; and (5) that the statement was defamatory. *Jews for Jesus v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

## II.    INADEQUATE ALLEGATIONS OF "PUBLICATION"

To successfully plead a claim for defamation per se, the plaintiff must allege the "identity of the particular person to whom the remarks were made with a reasonable degree of certainty" to afford the defendant "enough information to determine affirmative defenses." *Ward v. Triple Canopy, Inc*., 2017 U.S. Dist. LEXIS 115472, at *4 (M.D. Fla. July 25, 2017) (citing *Buckner v. Lower Fla. Keys Hosp. Dist*., 403 So. 2d 1025, 1027 (Fla. 3d DCA 1981). In *Aflalo v. Weiner*, No. 17-61923-CIV-MORENO (S.D. Fla. July 2, 2018), the plaintiff alleged that a defamatory statement was "posted on [defendant's] Facebook wall on his Facebook page for all to see including persons living in Florida." *Id.* The district court held that the plaintiff's assertion that the statement was put on the defendant's Facebook wall "for all to see" "failed to identify those persons to whom the Facebook post was published with a reasonable degree of

certainty." *Id.*  Accordingly, the court dismissed the complaint.

Counter-Claimant asserts that immediately after he terminated Plaintiff's employment without notice on February 18, 2020, Plaintiff posted three allegedly defamatory comments about him on his Facebook page. Only one of the posts mentions the Counter-Claimant. Counter-Claimant does not allege who, if anyone, saw the Facebook posts, other than Irvin's wife and two "[e]mployees" of Defendant Pronto Installations so one or all (it is not clear) of the posts and a handful of individuals who purportedly "liked" and two "commented" on one of the posts. Counter-Claimant does not allege that he suffered any damages as a result of his wife or two employees seeing one or all of the posts.  Counter-Claimant does not allege if the handful of individuals who purportedly "liked" and "commented" on one of the posts actually read the one post, or any of the other two posts.  Even so, Counter-Claimant does not allege how these handful of individuals are related in any way to Plaintiff or Counter-Claimants or if they even reside in the relevant community or that he suffered any damages as a result of them possibly seeing it.  Counter-Claimant does not allege that any of his customers or vendors ever saw the Facebook posts.

**III.    INADEQUATE ALLEGATIONS OF FALSE STATEMENT OF FACT – THE POSTS EXPRESSED A SUBJECTIVE VIEW, AN INTERPRETATION, A THEORY, CONJECTURE OR SURMISE, RATHER THAN CLAIMING TO BE BASED UPON OBJECTIVELY VERIFIABLE FACTS**

"A plethora" of Florida cases "exist which proclaim that a required element of defamation is a false statement (of fact) made about another." *Cape Publ'ns, Inc. v. Reakes*, 840 So.2d 277, 279-80 (Fla. 5th DCA 2003).  "[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable" defamation.

*Haynes v. Alfred A. Knopf, Inc*., 8 F.3d 1222, 1227 (7th Cir. 1993) (Posner, J.).

It is plain that Plaintiff was expressing in his Facebook posts a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts.  For example, the worst comment Counter-Claimant claims to be defamatory is "I wonder what Lowe's is gonna think when they find out what I have to say." (Counterclaim, ¶16).  This is clearly speculation and not a statement of fact. First, Plaintiff expresses "I wonder," meaning he is not asserting a fact. *See Gorwara v. AEL Industries, Inc*., 784 F. Supp. 239, 248 (E.D. Pa. 1992) (use of the term "I wonder" indicated a "query rather than a statement, the words may be technically incapable of defamation."). Then, he is speculating about what Lowe's may think at some indeterminate point in the future and does not even say what he would tell Lowe's or even if he is going to tell it to Lowe's.  Queries and speculation such as this fall far short of actionable statements of fact. *See Boulger v. Woods*, 917 F. 3d 471, 480 (6th Cir. Feb. 27, 2019) (actor James Woods' tweet "So called #Trump 'Nazi' is a #BernieSanders agitator/operative?" cannot be defamatory because "at least some of" readers of Woods's Twitter account would view the tweet as a legitimate question); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338 (D.C. Cir. 2015) ("it is generally settled as a matter of defamation law ... that a question, 'however embarrassing or unpleasant to its subject, is not accusation.'"); *Partington v. Bugliosi*, 56 F.3d 1147, 1157 (9th Cir. 1995) (holding that a defendant's use of a question mark indicates "lack of definitive knowledge about the issue").

IV.    **INADEQUATE ALLEGATIONS OF FALSE STATEMENT OF FACT – THE FIRST SENTENCE ("IT'S FUNNY TO ME….") IS NOT A VERIFIABLE STATEMENT OF FACT, BUT RATHER OPINION OR RHETORICAL HYPERBOLE, AND THEREFORE INCAPABLE OF DEFAMATION.**

"The first element of the claim, a false statement of fact, is the *sine qua non* for recovery in a defamation action" *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 (S.D. Fla. 2006). Counter-Claimant alleges that Plaintiff posted: "It's funny to me how c***suckers like Chris Irvin think he can mentally and physically abuse people and get away with it." (Counterclaim, ¶ 35). This is not a statement of fact. Courts determining whether an allegedly defamatory statement is a protected expression of statement of fact or opinion "'must construe the [allegedly defamatory] statement in its totality, examining not merely a particular phrase or sentence, but all of the words used in the publication.'" *Keller v. Miami Herald Publ'g Co*., 778 F.2d 711, 717 (11th Cir. 1985) (applying Florida Law) (quoting *Hay v. Indep. Newspapers, Inc*., 450 So. 2d 293, 295 (Fla. 2d DCA 1984)). "Whether the challenged statement was one of fact or opinion is … a question of law to be decided by the court." *Id.* "The context in which a statement was published and whether the publisher used cautionary terms must also be considered." *Id*. at 717.

### A.   Not A Verifiable Statement Of Fact

For a statement to be actionable, it must be capable of verification. *Keller*, 778 F. 2d at 714. In other words, it must "have a provably false factual connotation and thus [be] capable of being proven true or false." *Schaecher v. Bouffault*, 772 SE 2d 589, 597 (Va. 2015). *Accord Potomac Valve & Fitting, Inc. v. Crawford Fitting Co*., 829 F.2d 1280, 1288 (4th Cir.1987) ("[T]he verifiability of the statement in question [is] a minimum threshold issue. If the defendant's words cannot be described as either true or false, they are not actionable.").

This statement does not accuse Irvin of mentally or physically abusing people. It says that "[i]t's funny to me" that individuals "like" Irvin "think" they can mentally and physically abuse people and get away with it. The terms "think," "mentally and physically abuse people"

and "get away with it" are not identified by the Counter-Claimant as quantifiable terms. The pleading references no standard by which one could assess whether the statement is in fact false. The statements are thus not actionable. *See Mar-Jac Poultry, Inc. v. Katz*, 773 F. Supp. 2d 103, 122 (D.D.C. 2011) (statement that if one wanted, one could report ten million dead chickens a year, was "clearly hyperbolic, speculative, and as surmise did not imply a verifiably false fact").

### B.      The Comment Is Opinion

When determining whether a publication should be classified as opinion or not, Florida courts consider the totality of the statement. *Florida Medical Ctr., Inc. v. N.Y. Post Co*., 568 So. 2d 454, 457 (Fla. 4th DCA 1990).  Courts must "[e]xamine not merely a particular phrase or sentence, but all of the words used in the publication," and must "[c]onsider any cautionary language and the medium in which the alleged defamation was published." *Id*. Here, it is clear the statement is opinion based solely upon "[c]onsiderat[ion of the] cautionary language." Plaintiff used the terms "[i]t's funny to me" (e.g. opinion) and persons "like" Irvin think they can mentally and physically abuse people and get away with it.  This cautionary language shows Plaintiff was not directly accusing Irvin of mental or physical abuse.

In *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 924 (M.D. Fla. 1996), the court held that a defendant's statement that he was "confident" that full disclosure of the plaintiff's interviews would reveal his business as "a fraud" was a non-actionable expression of opinion.  First, the statement was – like in the instant case – made "in a medium that invites opinion" (e.g. the local newspaper's "commentary" section).  Like Facebook posts, newspaper commentary entries are posted in part "to see the[ subject's]  reaction to it." *Id.*  The *Colodny* court cited the case of *Henry v. Halliburton*, 690 S.W.2d 775 (Mo. 1985), in

concluding that the "fraud" statement was opinion.  In *Henry*, defendant published an article

alleging that the plaintiff agent had acted with "greed" for the purpose of "fleecing a consumer

for their [the agent's] own personal gain," and that said general agent was "a fraud and a

twister."  *Id*. at 778.  The court held that the defendant's statements were non-actionable

expressions of opinion. *Id*. at 790. The *Henry* court reasoned:

> The words relied on most heavily by appellants are the words "fraud" and
> "twister." Unless it can be established that by the use of the words "fraud" or
> "twister" respondent was accusing appellants of having committed a specific
> crime, then the use of these words would be too imprecise, undefinable and no
> more actionable that [sic] the words "with greed" "to fleece a consumer."
>
> * * * * * *
>
> Considering these words in light of all relevant circumstances, we believe that....
> [the defendant] is not charging the commission of any specific crime, and
> "broad, unfocused, wholly subjective comment[s]" that do not suggest to the
> ordinary reader that the plaintiff committed a crime are not actionable.

690 S.W.2d at 789-90 (internal citations omitted).

Just as the *Henry* court found that the word "fraud" was too imprecise, undefinable, and

non-actionable, so is Plaintiff's alleged comment "[i]t's funny to me" that individuals "like

Chris Irvin" "think" they can mentally and physically abuse people and get away with it.  These

words do not suggest to the ordinary reader that Irwin committed a crime of abuse. Therefore,

the totality of the circumstances surrounding the statement clearly demonstrate that it was an

expression of non-actionable, pure opinion.

Finally, the statement constitutes an opinion as opposed to a statement of fact because

the remainder of the post(s) communicates the underlying basis for the opinion or based on

facts which ware otherwise known or available to the reader (Irvin's wife and unidentified

"staff").  *See Hay v. Independent Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984)

(article alluding to plaintiff as a "crook" and "criminal" was considered to fall within pure opinion because the article disclosed the underlying facts and criminal charges against the plaintiff); *Razner v. Wellington Reg'l Med. Ctr., Inc*., 837 So.2d 437, 442 (Fla. 4th DCA 2002) ("statement is pure opinion, as a matter of law, when it is based on facts which are otherwise known or available to the reader or listener").

### C.      The Comment Is Rhetorical Hyperbole

"[A] defamation claim may not be actionable when the alleged defamatory statement is based on non-literal assertions of fact or rhetorical hyperbole that cannot reasonably be interpreted as stating actual facts about an individual."  *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002) (quotations omitted). "It is for the Court to decide, as a matter of law, whether the complained of words are actionable expressions of fact or nonactionable expressions of … rhetorical hyperbole." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379 (S.D. Fla. 2006). *See also Colodny*, 936 F. Supp. at 923 ("whether the alleged defamatory word is a [] non-actionable expression of pure opinion or an actionable expression of pure fact . . . is a question of law for the Court.")

A statement is considered rhetorical hyperbole when "the language itself negates the impression that the writer was seriously maintaining that the plaintiff committed the particular act forming the basis of the defamation." *Fortson v*, 434 F. Supp. 2d at 1379 (internal quotations and citations omitted). "Although rhetorically hyperbolic statements may at first blush appear to be factual, they cannot reasonably be interpreted as stating actual facts about their target." *Id.* at 1378-79.  "In determining whether an allegedly defamatory statement is an expression of fact or an expression of … rhetorical hyperbole, context is paramount." *Id.* at 1379. "All of the

circumstances surrounding the publication must be considered, including the medium by which it was disseminated and the audience to which it was published." *Keller*, 778 F. 2d at 714.

Here, Plaintiff allegedly made the Facebook post(s) about his boss, Irvin, immediately after Irvin fired him without notice after he complained about unpaid overtime.   It was obvious from the context that Plaintiff, a long term employee, was frustrated about being wrongfully terminated without notice and was "venting" on social media.   Facebook is a place that a reasonable reader would "anticipate [the use] of epithets, fiery rhetoric or hyperbole." *See Sandals Resorts Intern., Ltd v. Google, Inc*., 925 N.Y.S.2d 407, 415-16 (N.Y. App. Div. 2011) (noting the Internet "encourage[s] a freewheeling, anything-goes writing style", and that "readers give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts"). Because of the informal nature of social media pages like Facebook, reasonable readers of most Facebook pages "do not understand [posts] to be conveying factual information," which must be taken into consideration when analyzing the "context" of the statement.   *See* Ellyn M. Angelotti, *Twibel Law: What Defamation and its Remedies Look Like in the Age of Twitter*, 13 J. HIGH TECH. L. 433, 472-73 (2013).

In this context, it is clear that Plaintiff's comments were used in a loose, figurative sense as rhetoric or hyperbole out of frustration for being wrongfully terminated without notice. *See, e.g., Patterson v. Grant-Herms*, 2013 Tenn. App. 675 (Tenn. Ct. App. Oct. 8, 2013) (defamation claim was properly dismissed where Facebook and Twitter posts were "expressions of [defendant's] frustrations and complaints that she was not able to board the flight in a manner she wanted."); *Letter Carriers v. Austin*, 418 U.S. 264, 284-86, (1974) (use of the word "traitor" not basis for defamation action since used "in a loose, figurative sense"); *Greenbelt Cooperative*

*Publishing Ass'n, Inc. v. Bresler*, 398 U.S. 6, 14 (1970) (the word "blackmail" not actionable in context); *Phantom Touring, Inc., v. Affiliated Publications*, 953 F.2d 724, 727 (1st Cir. 1992) (deeming the expression "a rip-off, a fraud, a scandal, a snake-oil job" as a "figurative and hyperbolic" commentary of pure opinion).

Likewise, the connected comments about Irwin "lied to" and "stole from" Plaintiff are not actionable statements of fact but rather rhetorical hyperbole. Without the context and more information about the underlying facts, it is impossible to determine that these comments are false statements of fact. *See Palm Beach Newspapers, Inc. v. Early*, 334 So. 2d 50, 52 (Fla. 4th DCA 1976) (phrases and words such as "fingers in the pot," "cheating," and "stealing," when read in proper context, were rhetorical hyperbole and could not have been understood as accusing the plaintiff of committing any criminal offense.).

In *Couloute v. Ryncarz*, 2012 WL 541089 (S.D.N.Y. Feb. 17, 2012), the district court held that a plaintiff could not sue a jilted ex-lover for defamation for stating on an internet forum that the plaintiff "uses people," that he "rents or finances everything and owns nothing," and that he is "great at lying." *Id.*, at *2. The *Couloute* court noted that the website "liarscheatersrus.com is specifically intended to provide a forum for people to air their grievances about dishonest romantic partners" and that the reasonable reader would know that the comments are "emotionally charged rhetoric and the opinions of disappointed lovers." *Id.*, at *6 (citations omitted). In this context, the comments were viewed as rhetorical hyperbole and opinion. *Id.* Here, the termination of Plaintiff's long-term employment without notice is analogous to the breakup of a relationship addressed in *Couloute*. A reasonable reader of the Facebook post(s) (Irwin's wife and unidentified "staff") would have known that the comments

were "emotionally charged rhetoric" and the opinions of a frustrated employee who was immediately discharged after complaining about unpaid overtime (of which the readers were aware).

An online post calling a realtor a "liar" was among the statements challenged in a defamation lawsuit, *Shiamili v. Real Estate Group of N.Y., Inc.*, 952 N.E.2d 1011, 1014 (N.Y. 2011), which named a real estate industry website among the defendants. Because of the Communications Decency Act, the case against the website was dismissed because it was viewed as a passive conduit for third-party comments. However, the court also added that no reasonable reader could construe the statements, which were undoubtedly offensive, as fact or defamatory. *Id.* at 1019-20. *See also Tamburo v. Dworkin*, No. 04 C 3317 (N.D. Ill. Sept. 26, 2013) (allegations of being unethical or deceitful are statements of opinion and not fact).

Meanwhile, a Washington state appellate court dismissed online postings which included a list of abusive insults, including "liar" because no reasonable viewer could construe the statements as factual, not opinion. *See Life Designs Ranch, Inc. v. Sommer*, 364 P.3d 129, 135-36 (Wash. 2015). *See also M'Clurg v. Ross*, 5 Binn. 218, 219 (Pa. 1812) ("Every one knows that to say of a man that he is a rogue or a liar, is not actionable."); *Moseley v. Moss*, 47 Va. 534, 538 (1850) ("Thus it is not actionable to call a man a villain, cheat, rascal, liar, coward or ruffian . . . where such defamation bears only on the feelings or general standing or reputation of the party implicated, and the misconduct imputed has not been made punishable by statute."); *Schaecher v. Bouffault,* 772 SE 2d 589, 597 (Va. 2015) ("In exercising our gatekeeper function, we must therefore conclude that a reasonable person in Russell or Stidham's positions would have perceived the accusation (of lying) as a pure opinion on the part of Bouffault based upon

her subjective understanding of the underlying scenario and not upon an implied factual predicate of which they were unaware").

> **D.** **The Next Three Comments Relating To Plaintiff's Workplace-Related Heart Attack And Workers' Compensation Claim Are Not Sufficiently Pled And Do Not, As Pled, Rise To The Level Of An Actionable Statement Of Fact**

Next, Counter-Claimant contends the following alleged comments are defamatory:

"Oh btw this c***sucker is the reason for my heart attack." (Counterclaim, ¶ 38).

"He then hid the workers' compensation from me claiming workers compensation doesn't pay for heart attacks." (Counterclaim, ¶ 39).

"Meanwhile I got hurt on the job and it was caused by his actions." (Counterclaim, ¶ 40).

Evaluated in the context of a long term employee who was suddenly terminated without notice and given that the comments were posted on Facebook, a place that a reasonable reader would "anticipate [the use] of epithets, fiery rhetoric or hyperbole," *Sandals*, 925 N.Y.S.2d at 415-16, these statements are obviously rhetorical hyperbole, theory, surmise or opinion as opposed to a false statement of fact. The words are too imprecise and undefinable to be actionable, and do not suggest to the ordinary reader that Irwin committed a crime. There is no way to prove or disprove that Irvin was the reason for Plaintiff's heart attack or on-the-job injury. *See Gacek v. Owens & Minor Distribution, Inc.*, 666 F. 3d 1142, 1147 (8th Cir. 2012) (statement that co-worker "was the reason for Bill's death" was a "theory" or "surmise; not a statement of fact). Therefore, the totality of the circumstances surrounding the statement clearly demonstrate that it was an expression of non-actionable, pure opinion.

Likewise, the purported statement that Irwin "hid the workers' compensation from me

claiming workers compensation doesn't pay for heart attacks" is rhetorical hyperbole.  Again, the statement must be read in context.  In *Feld v. Conway*, 2014 WL 1478702 (D. Mass. Apr. 14, 2013), the court held that the Defendant's Twitter post "Mara Feld . . . is fucking crazy," could not be considered defamatory.  "The tweet was made as part of a heated Internet debate about plaintiff's responsibility for the disappearance of her horse. Furthermore, it cannot be read literally without regard to the way in which a reasonable person would interpret it."  *Id.*  The court held that, "when viewed in that context, cannot reasonably be understood to state actual facts about plaintiff's mental state. It was obviously intended as criticism—that is, as opinion—not as a statement of fact." *Id.* (granting motion to dismiss). Here, Plaintiff's comments were obviously intended as criticism—that is, as opinion—not as a statement of fact.

## V.     INADEQUATE ALLEGATIONS OF FAULT OR NEGLIGENCE

In order to comply with the First Amendment, a plaintiff in a defamation case must plead and prove fault. *Log Creek, LLC v. Kessler*, 717 F. Supp. 2d 1239, 1250 (N.D. Fla. 2010). Fault must amount at least to negligence on the part of the publisher.  *Thomas v. Jacksonville Television, Inc.*, 699 So.2d 800, 803-04 (Fla. 1st DCA 1997).  Counter-Claimant has not alleged fault, even negligence on the part of Plaintiff and, therefore, have failed to allege an essential element of defamation.

## VI.    INADEQUATE ALLEGATIONS OF DAMAGES

In Florida, a defamation plaintiff must allege that the defamation precipitated an injury; in other words that the defamation was the cause of injury.  *Johnson v. Finance Acceptance Co.*, 118 Fla. 397, 401 (Fla. 1935). *See also Am. Airlines, Inc. v. Geddes*, 960 So. 2d 830, 833 (Fla. 3d DCA 2007) (plaintiff must plead and prove actual damages); *Edelstein v. WFTV, Inc.*,

798 So. 2d 797, 798 (Fla. 4th DCA 2001) (plaintiffs alleging defamation per se "must nevertheless plead and prove actual injury").

Counter-Claimant does not allege any harm he suffered as a result of the Facebook posts. Counter-Claimant does not allege that he lost any business as a result of the posts. Thus, the claim brought by Irvin also is due to be dismissed on this basis alone.

## VII.   INADEQUATE ALLEGATIONS OF DEFAMATION

Even if Counter-Claimant had alleged any false statements of fact (which he did not), he fails to allege ultimate facts demonstrating that those statements of fact are defamatory. A written publication rises to the level of defamatory per se if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Aflalo*, *supra* (quoting *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953); *Seropian v. Forman*, 652 So. 2d 490, 495 (Fla. 4th DCA 1995). In a libel per se action, consideration is given only to the "four corners" of the publication. *Ortega Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998). The statement should not be interpreted in the extreme, but as the "common mind" would normally understand it. *Id.*

### A.   The Comments Do Not Impute Counter-Claimant With The Commission Of A Felony

Crimes characterized as having an infamous nature are "murder, perjury, piracy, forgery, larceny, robbery, arson, sodomy or buggery." *Klayman v. Judicial Watch, Inc*., 22 F. Supp. 3d 1240, n.3 (S.D. Fla. 2014). However, if an offense does not fall into one of these categories, only a felony is considered an infamous crime. *Id*.; *Madsen v. Buie*, 454 So. 2d 727, 729-30 (Fla. 1st DCA 1984) ("Under Florida law, a publication is libelous per se when it

14

imputes to another a criminal offense amounting to a felony….").  "To survive a motion to dismiss on this ground, Counter-Claimant must prove that the Statement, as read and understood by the 'common mind,' suggests that the Plaintiff committed [a] felony … under Florida law." *Aflalo*, *supra*.

Plaintiff's alleged statements in the Facebook post(s) do not, as read and understood by the 'common mind,' impute Counter-Claimant with the commission of a felony. The closest they come is the purported statement that Irwin "hid the workers' compensation from me claiming workers compensation doesn't pay for heart attacks."  Even if this comment was a statement of fact (which it is not), there is nothing defamatory about it. The issue of whether heart attacks can be covered under workers' compensation is a very confusing and technical part of the law and every case is different. *See, e.g. Speed v. Securitas USA*, 989 So. 2d 710 (Fla. 1st DCA 2008).

Apparently, the Counter-Claimant interprets this statement as Plaintiff accusing Irvin of "insurance fraud," (Counterclaim, ¶ 22) despite the fact that the Counterclaim is devoid of any allegations that Plaintiff ever said anything about "insurance" or that he ever referred to "fraud." Telling an employee that heart attacks are not covered under workers' compensation does not constitute fraud, particularly given that this is a highly complex legal issue and in many cases, true.  The applicable statute that governs workers' compensation fraud, Fla. Stat. § 440.105, prohibits an employer, with "the intent to injure, defraud, or deceive any insurer" to "[p]resent[] or cause[] to be presented any written or oral statement as part of, or in support of, a claim for payment or other benefit…."  The statute does prohibit an employer from expressing its opinion to an employee that "workers compensation doesn't pay for heart attacks," particularly where

(as here) there are no allegations that the action was taken with "the intent to injure, defraud, or deceive *any insurer*."  Because Plaintiff's Facebook comments, alone and without innuendo, do not impute to Counter-Claimant any felony, they do not qualify as defamation per se.

### B.     The Comments Do Not Subject Counter-Claimant To Hatred, Ridicule, Or Contempt

First, a random Facebook post(s) after a termination without notice is generally not going to subject a person to hatred, ridicule, or contempt.  In *Aflalo*, *supra*, the court held that where defendant posted a "grammatically flawed and incoherent post on his Facebook wall," given the context, the plaintiff "failed to convincingly plead that the Statement, or the circumstances surrounding it (i.e., the parties involved, the medium chosen, the words used), engender the type of hatred, distrust, ridicule, contempt or disgrace that is required to succeed under this prong." *Id.*

Counter-Claimant does not allege that Plaintiff's Facebook post(s), in light of the circumstances surrounding it (i.e., the parties involved, the medium chosen, the words used), engender the type of hatred, distrust, ridicule, contempt or disgrace that is required to establish defamation.

### C.     The Comments Do Not Tend To Injure Counter-Claimant In His Trade Or Profession

Even if the comments were statements of fact (which they are not), the comments do not tend to injure Counter-Claimant in his trade or profession. Per se defamatory statements must impute conduct to plaintiffs "incompatible with the essential functions of their respective jobs," taking into the context of the comment. *Scobie v. Taylor*, 2013 WL 3776270, at *3 (S.D. Fla. July 17, 2013).  Here, it is clear that Plaintiff's Facebook comments were used in a loose,

figurative sense as rhetoric or hyperbole out of frustration for being wrongfully terminated without notice.  Nothing in the comments directly accuses Counter-Claimant of physical or mental abuse, lying, stealing or workers' compensation fraud.  Even if they did, these comments would not tend to injure Counter-Claimant in his trade of appliance installation.

Moreover, a communication is not defamatory unless it prejudices the plaintiff in the eyes of a majority or a "substantial and respectable minority of the community."  *Jews for Jesus*, 997 So. 2d at 1114.  In other words, a communication is not defamatory unless it "would tend to prejudice [the plaintiff] in the eyes of a substantial and respectable minority of [the community], and that it is made to one or more of them or in a manner that makes it proper to assume that it will reach them."  Restatement (Second) of Torts § 559 cmt. e.  Counter-Claimant does not allege that the Facebook posts prejudiced him "in the eyes of a substantial and respectable minority of the community.  Indeed, he does not allege that anyone other than his wife and unidentified "staff" even saw the post(s) in the community, much led they prejudiced Counter-Claimant in any manner.

In *Berenato v. Tankel*, No. 3:10-cv-979-J-32MCR (M.D. Fla. Feb. 14, 2012), the court found that a defamation complaint was "clearly deficient" where it did not (1) allege the substance of the slanderous statements; (2) identify to whom the statements were made; (3) "describ[e] how the statements were injurious to Plaintiff's profession"; and (4) alleging any damages actually incurred."  *Id.*  Here, Counter-Claimant does not describe how each specific alleged statement was injurious to Plaintiff's profession.  Accordingly, his counterclaim fails on this deficiency alone.

**MOTION TO STRIKE ATTORNEY FEE DEMAND**

Florida courts have adopted the "American Rule" with respect to awarding attorney's fees to a prevailing party in litigation. "[I]n the absence of legislation providing otherwise, litigants must pay their own attorney's fees." *Talbott v. American Isuzu Motors, Inc.*, 934 So. 2d 643, 650 (Fla. 2d DCA 2006); *Buckhannon Bd. & Care Home, Inc., v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 602 (2001) ("parties are ordinarily required to bear their own attorney's fees—the prevailing party is not entitled to collect from the loser."). Counter-Claimant's demand for recovery of attorneys' fees is inappropriate and due to be stricken.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that Counter-Claimant's Counterclaim be dismissed for failure to state a claim. The Counterclaim appears to be retaliation against Plaintiff for exercising his rights under the FLSA by filing this suit to recover overtime compensation and, thus, Plaintiff reserves the right to amend the Complaint accordingly.  If the Court decides not to dismiss the Counterclaim, Plaintiff requests that the demand for attorneys' fees be stricken.

Respectfully submitted,

*/s/ Jay P. Lechner*
**LECHNER LAW**
Jay P. Lechner, Esq.
Florida Bar No.: 0504351
Jay P. Lechner, P.A.
Fifth Third Center
201 E. Kennedy Blvd., Suite 412
Tampa, Florida 33602
Telephone: (813) 842-7071
jplechn@jaylechner.com
shelley@jaylechner.com
*Attorneys for Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 26th day of July, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of filing via electronic mail to all counsel of record.

/s/ Jay P. Lechner\_\_\_\_\_
Attorney

19