**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

PAUL MURRAY

        Plaintiff,

v.                                         CASE NO.: 8:20-cv-00824-T-SCB-AEP

PRONTO INTSALLATIONS, INC.,
A Florida Profit Corporation, and
CHRISTOPHER IRVIN, individually

      Defendants

_____/

## DEFENDANT/COUNTERCLAIMANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIM

COMES NOW, Defendant, CHRISTOPHER IRVIN, (Defendant/Counterclaimant) by and through undersigned counsel, and files his Response in Opposition to Plaintiff's Motion to Dismiss Amended Counterclaim (Doc.28) and states the following:

**I.    INTRODUCTION:   COUNTERCLAIMANT'S AMENDED COMPLAINT PROPERLY STATE'S A CLAIM FOR LIBEL PER SE**.

In their Motion, Plaintiff attempts to frame Mr. Irvin's Counter-Claim as nothing more than a disgruntled former employee blowing off steam online. Plaintiff contends the "worst comment" Irvin claims is "I wonder what Lowe's is gonna think when they find out what I have to say."

However, Plaintiff's characterizations of the Counterclaim are entirely inaccurate. The substance of the Counter-Claim is a former employee, accusing his former employer of fraud, and theft, in a public forum, through the same means he previously used to communicate with his former co-workers, to destroy the reputation, good will, and working environment Mr. Irvin cultivated and guarded with his employees. Contrary to Plaintiff's Motion, the worst comment is not an isolated one. As discussed infra., Mr. Murray's post, taken in its totality, invokes actionable

defamation targeting Mr. Irvin by accusing him of lying, stealing, hiding a worker's compensation claim, and causing Murray's work related injury, and that lawyers confirm these facts which have legal ramifications. Counter-Defendant, Murray, is seeking to undermine the legal principles put in place to protect individuals — public and private alike — from suffering harm to their reputation, legitimate business relationships, and emotional and physical well-being, due to being the subject of defamatory and false statements. *See Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966) (recognizing important social values underlie the law of defamation and that society has a strong and pervasive interest in preventing and redressing attacks upon one's reputation).

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a pleading stating a claim for relief requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ...claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957) (the Court must not dismiss a complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need to plead detailed factual allegations to survive. *Id*. However, a plaintiff must rely on more than mere labels and conclusions in order to provide the grounds for his entitlement to relief, and the factual allegations must be sufficient to raise a right to relief above the mere speculative level, "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *See e.g., Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that recovery is very remote and

unlikely"); *Stephens v. Dep't of Health & Human Servs.,* 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the complaint] and all reasonable inferences therefrom are taken as true"); *Willing v. Suffolk Count Dept. of Social Services*, 2010 WL 2736941, at *2 (E.D.N.Y. July 8, 2010) (In deciding whether a complaint meets the threshold of stating a claim for relief, "the Court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor").

In order to state a claim of relief for defamation based upon a libelous act, the moving party must allege the following: (1) a false and defamatory statement of fact; (2) regarding the plaintiff; (3) published to a third party; and (4) which results in injury to the plaintiff. *See Idema v. Wager*, 120 F. Supp. 2d 361 (S.D.N.Y. 2000); *see also Klayman v. Judicial Watch, Inc.,* 2014 WL 2158418, at *7 (S.D. Fla. May 23, 2014) ("To establish a cause of action...plaintiff must show: (1) publication; (2) falsity; (3) the actor acted with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement is defamatory.") (citation omitted). "A statement is defamatory when, under any reasonable definition, such charges would tend to lower the subject in the estimation of the community and to excite derogatory opinions against him and to hold him up to contempt." *Adelson v. Harris*, 973 F. Supp. 2d 467, 482 (S.D.N.Y. 2013) (citation omitted).

Separately, a published statement constitutes libel *per se* if: "(1) it charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession." *Klayman*, 2014 WL 2158418, at *4; *see also Celle v. Filipino Reporter Enterprises Inc.,* 209 F.3d 163, 179 (2d Cir. 2000) (stating that as a "general rule...a writing which tends to disparage a person in the way of his office, profession or trade is defamatory per se and

does not require proof of special damages"); *Penn Warranty Corp. v. DiGiovanni*, 810 N.Y.S.2d
807 (N.Y. 2005)("Where statements are libelous *per se*, the law presumes that damages will result
and they need not be separately proved).

## III.   MURRAY'S PUBLICATION OF FALSE AND DEFAMATORY STATEMENTS

Mr. Murray intentionally posted false and defamatory statements to communicate with
former co-workers to injure Chris Irvin's professional and business reputation. Mr. Murray had
previously used Facebook as a medium of communication with his co-workers at Pronto
Installations. Specifically, while still an employee of Irvin's, Murray communicated with co-
worker, Mr. Hal Sylers through Facebook. Hal Sylers responded to Murray's postings on his
Facebook wall, approving and providing feedback of Mr. Murray's previous posts. Some of these
posts involved equipment, and sales of appliances from Pronto customers. Therefore, Mr. Murray
did not utilize his Facebook page or posts for non-work-related purposes. Murray specifically
utilized his Facebook page to sell the same appliances installed for Pronto customers or re-sold
appliances removed from Pronto customer homes. Murray then posted these appliances on his
Facebook page for sale within the community. Particularly, the same counties for which Pronto
and Mr. Irvin serve as appliance installers.

As Murray had in the past, he posted and published information that he intended to be read
by individuals he worked with, and other individuals in the relevant community who purchased
appliances. It is important to note that Murray sold appliances on his Facebook page. The
purchasers of the appliances are potential customers for Pronto to conduct installations.  Contrary
to Plaintiff's Motion, the intended readers of the postings are identified in the Amended
Counterclaim: Hal Sylvers, and Noel Manuel, former co-workers of Murray, and current
employees of Mr. Chris Irvin. These are the same former co-workers who were Facebook friends

with Murray and with whom Murray has communicated and they, particularly Sylvers, in turn communicated back through Murray's posts. As indicated in the Amended Counterclaim, Murray intentionally posted the false and defamatory comments on his wall, and intentionally "tagged" Mr. Irvin's name so that Murray would communicate his comments to his former co-workers. This was done in an effort by Murray to damage Mr. Irvin's working relationships which his employees, which it did.

Plaintiff dedicates much discussion to the fact that the writings were made on Facebook. The fact that the posts were made on Facebook does not mean the Publication element is deficient, or the statements were not defamatory. "The mere fact that speech is broadcast across the Internet by an anonymous speaker does not ipso facto make it nonactionable opinion and immune from defamation law." _Bently Reserve L.P. v. Papaliolios_, 160 Cal. Rptr. 3d 423, 426 (Cal. Ct. App. 2013). In contrast to Plaintiff's assertions, and as distinguished from _Aflalo v. Weiner_, where the comments were posted "for all to see", the Amended Counterclaim specifically identified multiple individuals by name, who were the intended readers, who read and reacted to the posts. The Amended Counterclaim pled that Irvin's employees, Mr. Sylvers, and Mr. Noel Manuel, questioned Mr. Irvin, and he was put on the defensive responding to and denying the allegations of lying, stealing, and hiding a worker's compensation claim. Because the defamatory comments directly implicated Mr. Irvin's handling of his business in allegedly causing an on the job injury "he caused my injury" and "he hid the worker's compensation from me" and "lied" and stole" the Amended Counterclaim asserts that these impute defects on Mr. Irvin's business and profession and damages are presumed. These types of statements are specific, non-generalized, and target Irvin for alleged work-related misconduct. These statements sowed distrust between employer and

employee as Murray no doubt intended when making the posts. Because the statements are false, and Murray posted them knowing they were false, the post is actionable defamation per se.

## IV.   MURRAY'S STATEMENTS ARE SPECIFIC, SERIOUS ASSERTIONS OF FACT, NOT OPINION.

"Internet posts where the tone and content is serious, where the poster represents oneself as having specialized knowledge may be reasonably perceived as containing actionable assertions of fact, as required for defamation liability." *Id*.  Murray's tone and content are serious. He did not use "loose" or "figurative" language when discussing a workplace injury "caused" by Mr. Irvin. Murray's tone is austere when he claims: "There are legal ramifications" for Mr. Irvin's actions. After claiming that Mr. Irvin "stole" and "lied" Murray makes the serious claim that Mr. Irvin "hid the worker's compensation from me." Employers are required, as indicated in the Amended Counterclaim, to carry insurance for employees, and have a statutory duty to report workplace injuries to carriers. This is a serious statement of fact: "He hid the worker's compensation from me…he was responsible for my injury." There is nothing loose or figurative about claiming Irvin stole and lied, and then hid worker's compensation for an injury Irvin allegedly caused. This is not opinion. These are statements of fact to be recited in an indictment for worker's compensation fraud, or claim against Mr. Irvin for negligence, and intentionally failing to report a workplace injury;   all   of   which   are   serious   and   specific.

Murray also indicated "specialized knowledge."  He specifically stated "the lawyers agree with me."  Murray's appeal to authority couches the statement in serious terms giving rise to Irvin having legal liability.  Murray's comments cannot be considered rhetorical or hyperbole as the comments were qualified with "the lawyers agree with me."   In *CrossFit v. Mustaph*a, the US District Court determined that a counterclaim for defamation was actionable when angry former

clients of a gym, posted internet reviews assigning specific dishonest acts to a businessman: "I left this gym because [plaintiff] was triple charging my members," and '[Plaintiff] went as far as to forge my name on a lease.' Those statements can be proved true or false and are therefore not statements of opinion." No.Civ.A. 13-11498-FDS, 2014 WL 949609, at *2 (D. Mass. Mar. 10, 2014). Reviews that provide sufficient, discreet facts make a defamation claim viable. *Id*. Murray's statement fit the *CrossFit* fact pattern in specifically identifying the business man by name, and making similar allegations that Mr. Irvin lied to him, stole from him, hid from him a worker's compensation claim, and caused his workplace injury.

Moreover, "While generalized comments on the Internet that lack any specificity as to the time and place of alleged conduct may be a signal to the reader there is no factual basis for the accusations, specifics, if given, may single the opposite and render an Internet posting as actionable as defamation." *Bently Reserve L.P. v. Papaliolios*, 160 Cal. Rptr. 3d 423, 426 (Cal. Ct. App. 2013). Murray did not speak in generalities in his recitation of facts: Chris Irvin is specifically named in the post. A worker's compensation claim for a workplace injury is specific. He specifically accused Mr. Irvin of causing a work-related injury. He specifically accused Mr. Irvin of hiding worker's compensation from him. He then attributed a statement specifically to Mr. Irvin for allegedly hiding the worker's compensation. He also invoked specialized knowledge that the "lawyers agree with [him]." The fact that Murray states that Mr. Irvin lied to him and stole from him are connected to the allegations of hiding a worker's compensation claim. Stating there are "legal ramifications" indicates this is anything but loose or figurative but actionable in the legal process, which readers, including Mr. Irvin's employees, and Mrs. Blanca Irvin, took seriously. Specific references to legal authority, theft, the hiding of worker's compensation benefits fall squarely under the *CrossFit* references to forgery and triple charging.

## V.     MURRAY'S ACCUSATIONS ARE DEFAMATORY PER SE

A.  Mr. Murray's statements that Mr. Irvin hid worker's compensation implicated Mr. Irvin in committing a crime.

When a statement charges a person with committing a crime, the statement is considered defamatory *per se*. *Richard v. Gray,* 62 So.2d 597, 598 (Fla.1953).  As indicated in the Amended Counterclaim, in Florida, it is a felony under F.S. §440.105(4)(a)(5): "to knowingly omit or conceal material information, required by s. 440.185 or s. 440.381, for the purpose of obtaining workers' compensation coverage or for the purpose of avoiding, delaying, or diminishing the amount of payment of any workers' compensation premiums."  Additionally, as indicated under F.S. §440.105(4)(a)(5): to knowingly omit or conceal information, "required by s. 440.185 or s. 440.381" is also a crime. Under F.S.§440.185(2) the Employer is "within 7 days after actual knowledge of injury or death, the employer shall report such injury or death to its carrier." Murray's statement: "He then hid the workers compensation from me claiming that worker's compensation doesn't pay for heart attacks meanwhile I got hurt on the job and it was caused by his actions…" accuses Irvin of committing felonious acts.

In  *Shafran v. Parrish*, the Second DCA held that statements in a letter from a lawyer to Plaintiff, indicating that he was involved in criminal extortion, and that his acts were being forwarded to the State Attorney's Office were sufficient for a defamation per se claim. 787 So. 2d 177 (Fla. 2d DCA 2001). "Certain language in the letter, 'your actions are criminal' or 'we are forwarding a copy of your correspondence to the State Attorney by copy of this letter for investigation and prosecution for criminal extortion,' would permit the trier of fact to conclude the letter charged Mr. Shafran with a crime." *Id*.

Similarly, in our matter, Mr. Murray states Mr. Irvin lied to him and stole from him. He stated that Mr. Irvin hid a worker's compensation claim from him. Mr. Murray stated that Mr.

Irvin was the cause of his work-related injury. To demonstrate confirmation that these acts are true, Mr. Murray makes an appeal to authority: "the lawyers agree with me" and "there are legal ramifications." These statements do not suggest they are "rhetorical hyperbole" wherein the reader would understand they are not meant to be taken seriously. Instead, they identify specific factual allegations: "He hid the worker's compensation from me." And, "the lawyers agree with me." This is comparable to *Shafran*, wherein Plaintiff's acts were being communicated to the State Attorney's Office. Mr. Murray similarly invokes a legal authority as affirming his position that Mr. Irvin stole from him, (theft) and that Irvin lied to him and hid his worker's compensation claim (fraud). All of which suggest the commission of a crime.

Courts have interpreted this behavior as criminal activity in Florida.  In *Bend v Shamrock Services,* the First DCA discussed the broad reach of the worker's compensation statute, including the employer's continued obligations to report information to carriers without concealment.  59 So. 3d 153 (Fla. 1st DCA 2011), review dismissed, <u>69 So. 3d 279 (Fla. 2011)</u>. "[T]he remedy provided for in section 440.381(6)(a) is not limited to misrepresentations made in the application process; rather, the language of the statute is sufficiently broad to encompass any pertinent misrepresentation or concealment made by an employer, whether made at the time of application or thereafter. *See* 440.381(1)-(8), Fla. Stat. (2007)." The Court discussed the fraudulent nature of an employer's omissions of information it is required to report or face criminal prosecution:

> Under the requirements of chapter 440 and the application signed by the Employer, the Employer was required to timely and regularly submit to Zenith quarterly employee earnings reports, *see* section 440.381(4), Florida Statutes, and, update his application monthly. The failure to update the application is a crime. *See* § 440.105(3)(a), Fla. Stat. (2007). Under the mandatory provisions of section 440.105(1)(a), Florida Statutes (2007), a carrier must report such omissions to the Division of Insurance Fraud, Bureau of Workers' Compensation Fraud, which in turn is required to investigate and report the criminal act to the prosecuting agencies "having jurisdiction" under chapter 440.

B.  Murray's Statements Allege that Mr. Irvin Committed Dishonest Acts.

In addition to Murray's statement that Irvin engaged in illegal activity, he also alleged that Mr. Irvin committed dishonest acts concerning the operation of his business and profession. "A false defamatory statement which suggests that someone has committed a dishonest or illegal act is slander *per se." Thompson v. Orange Lake Country Club, Inc.*, 224 F. Supp. 2d 1368 (M.D. Fla. 2002) (applying Florida law). Mr. Murray expressly stated that Irvin lied to him and stole from him. Additionally, his statement that Irvin "hid workers compensation" is a dishonest act             related             his             conduct             in             business.

In *Hood v. Connors,* the Fifth DCA held that statements related to alleged dishonest conduct were defamation per se: "[T]he alleged statements accuse Hood of dishonest acts committed while holding public office, and the substance of the remarks directly impacts on his character and trustworthiness to hold public office. Such remarks usually constitute slander per se." 419 So. 2d 742 (Fla. 5th DCA 1982). "They could not be much more direct had Connors called Hood a thief and plunderer of the taxpayers of the County." *Id*. Statements that suggest that a person is not trustworthy are Defamation per se. "In addition to the statements accusing Marcus of the unauthorized practice of law, a further implication that a jury may draw from the letter is that Marcus is a loathsome, dishonest character who cannot be trusted by clients; therefore even if the foregoing statements in the letter were taken as true, there remains a genuine issue as to Horizon's motives." *LRX, Inc v Horizon Associates Joint Venture ex rel. Horizon ANF, Inc.,* 842 So. 2d 881 (Fla. 4th DCA 2003).

Murray's statements that Mr. Irvin stole something of value, his workers' compensation benefits and lied about said benefits, and caused his work-related injury, are all accusations against

Irvin serving in his role as an employer. In *Walsh v Miami Herald Publishing, Co.,* 80 So.2d 669 (Fla. 1955) (en banc), the defendant newspaper published an account of a policeman's testimony in court which was said to be 'exactly opposite' to his own official report of an accident. The newspaper account referred only to this single instance of lying. Construing the account 'as the common mind would naturally understand it; the Court held the libel was actionable per se because it tended to subject the officer to distrust. *Id*. Although the court made reference to the fact that part of the plaintiff's duties as a police officer was to testify in court, and the libel would thus tend to injure him in his trade, it was pointed out that "even absent the element of injury to trade or profession, imputations of untruthfulness have been considered actionable per se." *Id*.  See Restatement of Torts, Chapter 24, Sec. 569. Comment g.' 80 So.2d at 671.

To lie, steal and hide are dishonest acts.  Murray accused Mr. Irvin of all of these.  Hiding is synonymous with "concealing," usually something of value.  Although no case law interpreting the term "hidden" in a comparable context is available, the dictionary defines "hide" as "to put or keep out of sight; secrete" or "to prevent disclosure or recognition of; conceal."  American Heritage Dictionary, 621 (New College Ed. 1976); *M-Square Theaters v Transamerica Ins. Co.,* 1993WL 42231 (S.D.N.Y. Feb. 18, 1993). Because Murray identified Irvin, and accused him of dishonest acts, Murray's imputations of untruthfulness are actionable per se.

C. Murray's statements impute to Irvin conduct, characteristics or a condition incompatible with the proper exercise of his lawful business trade or profession.

An action for libel will lie for a false and unprivileged publication by letter, or otherwise, which exposes a person to distrust, hatred, contempt, ridicule or obloquy or which causes such person to be avoided, or which has a tendency to injure such person in his or her office, occupation, business or employment. See *Wolfson v Kirk,* 273 So.2d 774 (Fla. 4th DCA 1973).

Murray devotes much discussion to the nature of social media and Facebook to suggest that postings are pure opinion, and not actionable. However, numerous Florida cases reveal that statements concerning misconduct in one's profession and business functions is actionable defamation per se.

For example, in *Blake v. Giustibelli*, internet posts by an attorney's former client and the client's former spouse stating that the attorney lied about the amount of her attorney's fee and falsified the parties' contract in divorce proceedings were not statements of opinion protected by the First Amendment. The statements were factual allegations and provided a basis for the attorney's libel action in which evidence showed the posts were false.  182 So.3d 881 (Fla. 4th DCA 2016), review denied 2016 WL 869895 (Fla. 2016).  Of import in *Giustibelli*, is that the statements were made in internet posts. The statements were made in a context which Plaintiff would claim shows a former client "venting" after losses in court. This is of no matter when the substance of the statements ridicules the person in their business and subjects them to distrust. Like *Giustibelli*, Murray claims that Irvin lied, stole from him, and hid worker's compensation. *Giustibelli* involved a claim that the Attorney lied, and took money from the client. These were held to be statements of fact as reported from the clients online. This is analogous to Mr. Murray reporting facts about his injury, that Irvin caused it, and that Irvin engaged in dishonest conduct, "lied" and "hid" and this was done in an employment context. Plaintiff claims this does not implicate Mr. Irvin's performance of his business or his profession. Plaintiff completely ignores that the Amended Counterclaim identified that multiple employees of Irvin read the statements and questioned Irvin about his employment practices pitting Irvin in a defensive posture with his own employees. Irvin having to defend himself in his own business towards his own employees subjected him to distrust and disrepute in his business practice. The claim that Irvin lied, stole, and

hid from his employee directly undermines Irvin's reputation for competent, trustworthy performance of his job as an employer.

Another instructive, and well-reasoned Florida case involves defamatory internet postings wherein the Defendants, much like Murray, claimed that their statements about Plaintiff were expressions of opinion.  *See Saaidi v Maroun,* No.: 8:08-cv1976, 2008 WL 4194824, at *4 (M.D. Fla. 2008) (applying Florida law).  In *Saaidi*, the defamatory statements alleged that Plaintiff was "a mentally unstable stalker, a criminal, and that he has received gifts paid for with money stolen from the Lebanese government, as well as statements that suggest that Plaintiff falsely purports to have a law degree and has committed statutory rape." *Id*. This Court held that these statements, "imply factual knowledge. They are not merely subjective characterizations of publicly-available information." *Id*.  In our case, Plaintiff's Motion claims that the internet postings too are not actionable because they are merely expressions of opinion. However, statements that Mr. Irvin lied, stole, hid worker's compensation, caused Murray's work-related injury, and that the lawyers agree that there are legal ramifications are fact statements that imply factual knowledge. These are not subjective characterizations of publicly available information. Instead these are the first-hand accounts based on alleged personal knowledge that Murray claims he suffered at the hands of his employer.

Further, in *Saaidi v. Maroun*, this Court found that "Defendants, at times, even combined the statements with claims that the information was the result of 'thorough investigation,' and posted them on sites that proclaim 'OUR STORIES ARE TRUE.' Certainly, the postings and context in which they were made suggest that the information is based on facts showing that Plaintiff is involved in criminal, immoral, and unprofessional behavior. Thus, the statements assert facts that can reasonably be construed as defamatory."

In the instant matter, Plaintiff Murray wove within his statements that the "lawyers agree with me" and that there are "legal ramifications" for Mr. Irvin's actions. The postings and context in which they were made in our case suggest that the information is based on facts showing that Irvin is involved in criminal, immoral, and unprofessional behavior. Thus, the statements assert facts that can reasonably be construed as defamatory.

Murray's statements about the conduct of Mr. Irvin's business affairs asserts that he is not a reputable employer and was directed to current employees. In *Thompson v Orange Lake Country Club, Inc.,* held that statements concerning plaintiff's employment that suggested the employee would be a problem, or did not conduct themselves properly in the work-place are defamatory per se. 244 F. Supp. 2d 1368 (M.D. Fla. 2002)(applying Florida Law). The defamatory statements— that Thompson was "bad news," that she is "sexual harassment material," that "you don't want her in your company,"—constitute slander *per se. Id*. The alleged statements implied that Thompson would make frivolous charges of sexual harassment against her new employer, which would be conduct incompatible with the proper exercise of Thompson's new employment duties. Such statements constitute slander *per se.* As in *Thompson* Murray's statements suggest Mr. Irvin's actions not compatible with the proper exercise of his business and undermined Mr. Irvin professionally by attacking his honesty. Murray's statements were intended to injure Mr. Irvin in his trade in the appliance installation business.  The statements tend to prejudice Mr. Irvin in the eyes of his employees and customers.

D.   Murray accused Mr. Irvin of deficient performance in his business or profession.


Courts have held that the accusation of being a bad businessman is defamatory. False statements concerning one's business and profession are slander per se. *Litman v Massachusetts Mut. Life Ins. Co.,* 739 F. 2d 1549 (11th Cir. 1984) (applying Florida law).  In *Litman* a former general agent for an insurance company brought a defamation per se case against the insurance company for its statement that he was a "bad businessman", the court concluded that the statement was slanderous per se, for it injured the former general agent in his occupation.  "A slander which imputes to the plaintiff a matter which reflects adversely upon him in his occupation has long been held actionable *per se* in Florida." See *Teare v Local Union No. 295 of the United Ass'n of Journeymen and Apprentices of Plumbers and Pipe Fitters Industry of the U.S. and Canada,* 98 So.2d 79 (Fla. 1957); *LeMoine v Spicer,* 146 Fla. 758, 1 So.2d 730 (1941); *Commander v Pedersen,* 116 Fla. 148, 156 So. 337 (1934).  "We find the comments that Litman was terminated because he was a 'bad businessman' or 'lousy businessman' to fall well within this category."

Murray's statements only arise from his capacity as an employee, and Irvin's capacity as his employer. Therefore, all of the harmful attacks on Irvin concerning dishonesty, theft, and concealment, are all intrinsically intertwined with Irvin's business, and professional capacity.


## VI.  DAMAGES ARE PRESUMED IN LIBEL PER SE ACTION

In defamation per se actions, no showing of special damages is required; general damages are presumed.  See *Sprovero v Miller*, 404 So. 2d 793 (Fla. 3d D.C.A 1981).  Any written or printed statement that falsely and maliciously charges another with the commission of a crime is libelous per se.  *Myers v Jim Russo Ministries, Inc.*, 3 So. 3d 411 (Fla. 2d DCA 2009).  In Myers a former participant in the Ministries' program had stolen a television and a VCR from program's facility

did not defeat former participant's slander claim against operator of the program; operator could still be held liable for nominal damages. Restatement (Second) of Torts § 558. "Even if Mr. Myers' evidence failed to prove actual money damages, a jury could find Russo liable for nominal damages." "One who is liable for a slander actionable per se or for a libel is liable for at least nominal damages." *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan,* 629 So.2d 113, 116 n. 4 (Fla.1994) (quoting Restatement (Second) of Torts § 558 (1977)).

Counter-Claimant Irvin have plead he is the victim of defamation per se because he has been subjected to false statements about his handling of his business and has been accused of dishonesty are not compatible with the normal functions of his business. He has suffered damages through ridicule and the distrust of his employees who have questioned allegations of criminal conduct as claimed by Murray. The damages include the injury to his relationships with employees, and injury directly resultant of Murray's posts. When employees question their employer about alleged lies, whether their employer hid a worker's compensation claim or stole from a co-worker this unquestionably damages the employee/employer relationship. This is why defamation per se does not require pleading special damages.

Counter-Claimant Irvin withdraws his claim for attorney's fees that were previously requested in the prayer for relief in his claim for defamation per se.

## **CONCLUSION**

"Every person may speak, write and publish sentiments on all subjects *but shall be responsible for the abuse of that right."* Article I, Section 4, Florida Constitution. Murray unabashedly abused that right and should be held accountable for his actions. The Amended Counter-Claim should not be dismissed because it sufficiently alleges Murray published to

individuals, other than Mr. Irvin, false statements including statements that Irvin was dishonest in his business which Murray knew were false.  These knowingly false statements concerning Mr. Irvin's business reputation and profession have caused and are causing injury and harm to Mr. Irvin's reputation as an employer and business person.

Notwithstanding the foregoing, should this Honorable Court determine that the Amended Counter-Claim fails to sufficiently allege facts to support a claim for defamation per se, Counter-Claimant respectfully requests this Honorable Court provide him with an opportunity to amend his claims to correct any defects perceived by the Court.

Dated August 12, 2020.

Respectfully submitted,

**WHITTEL & MELTON, LLC**
*/s/ William J. Sheslow*
William J. Sheslow, Esq.
Florida Bar No.: 92042
11020 Northcliffe Boulevard
Spring Hill, Florida 34608
Telephone: (352) 683-2016
Facsimile: (352) 556-4839
will@theFLlawfirm.com
pleadings@theFLlawfirm.com
pls@theFLlawfirm.com
jwalsh@theFLlawfirm.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of August, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of filing via electronic mail to all counsel of record.

*/s/ Will Sheslow*

William J. Sheslow, Esq.